GREEN *v.* HODGES, ADMR., ETC.

No. 40096          April 2, 1956          86 So. 2d 335

May 7, 1956 87 So. 2d 87

*Mitchell & McNutt,* Tupelo; *Robert E. Nason,* Ackerman, for appellant.

*Coleman & Dobbs,* Ackerman; *P. L. Douglas,* Starkville, for appellee.

HOLMES, J.

James Edward Hodges was killed on June 10, 1953, as the result of a highway accident which occurred about 2:30 o'clock P.M. on Highway 15 in Choctaw County, about one mile south of the Town of Mathiston. Claims for damages arising out of the death of the deceased were asserted by his administrator against Roy C. Hodges, Uel H. P. Sawyer, Joe A. Day and Oscar Green. Settlement was effected by the administrator as to all claims against Sawyer and Day, who paid $9,000 in exchange for a covenant not to sue. This suit was then filed against Oscar Green and Roy C. Hodges seeking to recover of them damages for the death of the deceased. The trial of the case resulted in a peremptory instruction for Roy C. Hodges and a jury verdict in favor of the plaintiff and against Oscar Green for $10,000. From the judgment entered, this appeal is prosecuted by Oscar Green.

Three vehicles were on the highway at the time of the accident. A farm tractor to which was attached a four-wheel rubber tired wagon or trailer loaded with logs was being driven by Roy C. Hodges. He was proceeding north and was traveling on his right hand side of the road at a rate of speed of about 15 miles per hour. The deceased was riding on the tractor. Proceeding north and approaching the tractor from the rear was a Buick automobile owned by Joe A. Day and driven by Uel H. P. Sawyer. Sawyer was driving on his righthand side of the road and was traveling at a rate of speed, according to his testimony, of about 40 to 45 miles per hour. Proceeding in the same direction and following the Buick automobile was an automobile driven by the appellant.

The appellant testified that he was traveling on his right-hand side of the road at a rate of speed of from 55 to 60 miles per hour. The highway was paved and there were no other vehicles on the highway than those mentioned, and at the place of the accident the highway was straight in both directions. The weather was clear and visibility was good for a distance of approximately one-quarter of a mile in both directions.

Sawyer testified that he was a British subject, residing in Nassau in the Bahama Islands, and was at the time on a visit in this country; that he was accustomed to driving in Nassau where the rules of the road require the driver of a motor vehicle to drive on the left-hand side of the road, and to pass a vehicle going in the same direction on the right of the vehicle to be passed, but that he was also accustomed to driving an automobile in this country where the rules of the road are the opposite. He further testified that he observed the tractor and trailer in front of him and that before attempting to pass the same he glanced in his rear view mirror and saw the appellant's car approaching and apparently intending to pass, since his car was partly over the center line of the highway; that Sawyer then turned his car to the right, and in doing so, struck the rear of the trailer, as a result of which logs were scattered over the highway. As a result of this impact, the deceased was killed. Sawyer further testified that when he last saw the appellant approaching from the rear, the appellant was about 100 or 150 feet from him and traveling at a rate of speed which he estimated to be 60 or 65 miles per hour. On cross-examination, he later testified that he was unable to say whether the appellant was exceeding 60 miles per hour or not. Sawyer was then about 50 feet from the tractor and trailer. The appellant did not run into the Sawyer car or the tractor and trailer, did not hit or strike anything, and came to a stop on arriving at the scene of the accident.

The negligence charged to the appellant is (1) that he was operating his automobile at an unreasonable and unlawful rate of speed; (2) that he failed to keep his vehicle under control, and failed to keep a reasonable and proper lookout ahead; (3) that he failed to exercise reasonable care and caution required of a man of ordinary prudence under the circumstances then and there apparent; and (4) that he attempted to pass the vehicles preceding him at a time when so to do obviously created a dangerous and hazardous situation.

We have carefully reviewed the evidence in this case and we are unable to detect any negligent act on the part of the appellant which in any manner proximatetly caused or contributed to the death of the deceased. The appellant had a right to be on the highway, and even assuming that he intended to pass the vehicles in front of him, he had the right to do so if the left lane was clear, as the testimony shows it was. Even if he intended to pass, it was not to be reasonably foreseen by him as an ordinarily prudent person that Sawyer would then undertake to pass the tractor to the right, and in so doing, drive into the rear of the trailer. ▮▮ The law is well settled that before one can be held liable for negligence, the attendant circumstances must be such that an ordinarily prudent person ought reasonably to have anticipated that some injury would probably result from the act done, and the probability must be a reasonable one. Sturdivant v. Crosby Lumber Co., 218 Miss. 91, 65 So. 2d 291; Gulf Refining Company v. Williams, 183 Miss. 723, 185 So. 234.

▮▮ As we view the testimony, it reveals no conduct on the part of the appellant which is not consistent with the acts of a reasonably prudent person. Further, we think that the evidence wholly fails to show that appellant, under the attendant circumstances, could have reasonably foreseen the tragedy which occurred. If there was any negligence on the part of anyone proximately

causing or contributing to the injury, it was the negligence of Sawyer in turning his car to the right and running into the rear of the trailer when he could have, in the exercise of reasonable care, continued behind the trailer on his right-hand side of the road without hazard to anyone. As we see the case, appellant was no more than an unfortunate witness to a tragic accident. It is our conclusion, therefore, that the judgment of the court below should be and it is reversed and judgment rendered here for the appellant.

Reversed and judgment here for appellant.

*Roberds, P.J.,* and *Hall, Lee* and *Ethridge, JJ.,* concur.

## ON SUGGESTION OF ERROR AND MOTION TO DISMISS APPEAL.

ETHRIDGE, J.

On suggestion of error appellee argues again that it was a question of fact for the jury as to whether appellant Green was negligent in driving up to the rear of Sawyer's car at a rate of speed in excess of the speed limits and in attempting to pass the two vehicles ahead of him at a time when to do so should to a reasonable man have indicated that he would create a dangerous and a hazardous situation.

With reference to the speed of Green's car, appellee takes statements by Sawyer that Green was a quarter of a mile behind him when he (Sawyer) travelling at 45 to 50 miles per hour, was a quarter of a mile behind the tractor and trailer, and, applying an algebraic formula, appellee contends that Green must have been driving at a speed of more than 84 miles per hour to have overtaken Sawyer in this distance. All three of the vehicles were moving objects at various speeds, and a witness' estimate as to the respective distances at one point before the collision is usually not a sound basis for mathematical inferences and estimates as to speed, particularly

where the only two eyewitnesses who testified were rather specific in their testimony. On direct examination Sawyer said that Green was approaching him at a speed of around 60 to 65 miles per hour, but when pinned down about the speed of Green's car, he frankly said that he could not say that Green was going more than 60 miles an hour. Green said he was going 55 to 60 miles per hour. So the only testimony in the record by eyewitnesses who observed the collision and the circumstances prior there to places Green's speed at a legal highway rate of 55 to 60 miles per hour.

Moreover, both Sawyer and Green testified that Green's car stopped to the rear of the point of impact of Sawyer's car with the tractor and trailer. Considerable debris and logs were scattered over the highway. Green said that he came slowly and easily to a stop approximately at the point of impact. Green's car did not hit or collide with any vehicle or object. The testimony of Harpole and Booth, with reference to skid-marks which they observed sometime after the collision, is not adequate to make a jury issue where both Sawyer and Green testified that Green's car stopped before the point of impact, and where the other evidence is considered. Roy C. Hodges, who was driving the tractor, did not know that the vehicles were behind him before the accident occurred.

Sawyer admitted that he did not make any preparation to pass the tractor and trailer until he was about 50 feet away from them, at which time he was travelling at about 40 miles per hour. At that time Sawyer said that Green's car was almost halfway across the center line, 150 feet to his rear, manifestly getting ready to pass. It is uncontradicted that at that point the left lane was open for passing. Green's vehicle did not strike anything. Sawyer was negligent in coming up on the tractor and trailer to within 50 feet of them before deciding whether he would pass or try to slow

down further. Appellee's witness Harpole testified that Sawyer's car made skid-marks for only six feet before hitting the trailer. He did nothing until he was 50 feet from the rear of the trailer. So by the time Sawyer had made any preparations to pass, he was too close to the trailer to turn out. His own negligence was the sole proximate cause of the accident. The record does not reflect any action on the part of Green which would constitute negligence which might be a contributing proximate cause of the accident. Moreover, we do not think that appellant could reasonably foresee that Sawyer would cut to the right and strike the rear of the trailer as the result of any actions of appellant. And of course the attendant circumstances relative to a man's action must be such that an ordinarily prudent person ought to have reasonably anticipated that some injury, not necessarily the particular injury, would result. Sturdivant v. Crosby Lbr. Co., 218 Miss. 91, 65 So. 2d 291 (1953).

Hence the evidence convinces us that there was nothing for the jury to act upon; that Green's actions did not constitute negligence, and could not be a proximate contributing cause of the collision; that the collision resulted solely from the negligence of Sawyer; and that under the undisputed facts as to the location of the respective cars and the speeds thereof Green could not reasonably foresee that Sawyer would drive as he did.

After the case decided by this Court on the merits on April 2, 1956, appellee filed along with his suggestion of error a motion "to strike cause from the docket", or a motion to dismiss for lack of jurisdiction. It is based upon an averment that the appeal bond did not comply with Code of 1942, Sec. 1161, which provides that the court may grant appeals in term time and "the appeal bond in such cases may be approved by the court, or by its order the clerk may approve the bond, or it may be approved by the judge or chancellor". The bond

was approved by the circuit clerk, but there is no order of the court authorizing the clerk to do so. The judgment of the trial court granted an appeal "upon the filing of the necessary bond, as required by law". No complaint about the appeal bond was made prior to the decision of this court on the merits. If the question had been seasonably raised, the bond if defective would clearly have been subject to amendment under Code Section 1959. Assuming but not deciding that the bond contained an amendable defect, appellee waived that defect by not raising the issue prior to the decision on the merits. Neely v. City of Charleston, 35 So. 2d 316 (Miss. 1948); see Snipes v. Commercial & Industrial Bank, 82 So. 2d 895, (Miss. 1955).

Suggestion of error overruled; motion to dismiss appeal overruled.

*Roberds, P. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.