TEOC SUB-DRAINAGE DIST. *v.* HALLIWELL *et al.*

(Division B.   Jan. 10, 1938.   Suggestion of Error Overruled Feb. 21, 1938.)

[178 So. 84.   No. 32958.]

Arthar Bruce and H. C. Mounger, both of Greenwood, for appellants.

724

Pat D. Holcomb, of Clarksdale, and **A. H. Bell, Knox Lamb** and **Hardy Lott,** all of Greenwood, Amici Curiae.

**Pollard & Hamner,** of Greenwood, for appellees.

728

**R. F. Kimmons**, of Water Valley, for appellees.

Argued orally by **Arthar Bruce**, and **H. C. Mounger,** for appellant, and by **R. F. Kimmons**, and **W. L. Hamner**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellees, Halliwell and Cooper, brought their separate actions in the circuit court of Leflore county against appellant drainage district for a writ of mandamus to compel the commissioners of the district to pay out of its funds on hand the bonds of the district held by them in the aggregate sum of $3,114.53. The facts in each case were the same, and by agreement the cases were consolidated and tried as one.

The trial was on petition for mandamus, answers, agreed facts, and additional testimony of witnesses in-

troduced, resulting in a judgment in appellees' favor awarding the writ. From that judgment appellant prosecutes this appeal.

The defense of the district was that to pay the bonds of appellees in full would result in giving them a preference over other bondholders, which the law would not permit. Appellees first obtained judgments against the district for the amounts of their bonds, which was not necessary as the validity of the bonds was not questioned. Johnson v. Bruce, 177 Miss. 581, 171 So. 685.

The agreed facts were as follows: In 1922 the district issued its bonds in the sum of $42,500, of which $22,500 has been paid and retired. In 1928 additional bonds were authorized in the sum of $14,500, of which only $9500 has been sold. The first issue will mature on March 1, 1938. On January 1, 1937, the district had on hand $7,841.60 in cash. At the time of the trial in June, 1937, it had on hand $13,723.33 in cash. The assessed benefits of the district amount to $288,915.02. The total amount of bonds issued was $52,000, of which, as stated, $22,500 has been paid, leaving unpaid $29,500. The drainage taxes collected in 1937 totaled $5,881.73. The lands of the district are partly in Leflore county and partly in Carroll county. The lands in the latter county are in arrears in drainage taxes in the sum of $6,500 with interest thereon since 1923. The district has $5,400 of authorized bonds unsold.

The district offered to prove, which the court on objection did not permit, that during what is commonly known as the period of depression some of the lands of the district had been forfeited to the state for state and county taxes and not redeemed, and furthermore that it was necessary to make certain expenditures for the maintenance and repair of the levies and other expenses of the district. Other evidence was offered by the district, and ruled out on objection, tending to show in a general way that during that period the assessed betterments of the district were reduced in value.

Those rulings of the court are assigned and argued as error. There was no offer to prove that the district was insolvent. Under section 4492, Code of 1930 (Drainage District Chapter), the bonds and other evidences of indebtedness of the district are secured by a lien on the lands and railroads, subject to taxation in the district, "in an amount not to exceed the amount of benefits assessed against such lands and railroads." As stated, the assessed benefits of the district amounted to $288,915.02: They constitute the assets of the district for the solvency of which the lands and railroad property are made liable.

The argument that there can be no preference among the bondholders of an insolvent taxing district is not controverted. That position is sustained by numerous authorities. When the taxing power is exhausted and there are not sufficient funds to pay all indebtedness in full, there can be no preference—creditors must share pro rata unless the law provides otherwise, and it does not here. On their face the unpaid indebtedness of the district amounts to only about one-tenth of the assets— the assessed benefits.

Affirmed.